**S.I.U. OF THE VIRGIN ISLANDS, Affiliated with the SEA-FARERS' INTERNATIONAL UNION, Plaintiff**

v.

**GOVERNMENT OF THE VIRGIN ISLANDS, Defendant**

## Civil No. 738/1977

## Territorial Court of the Virgin Islands

### Div. of St. Thomas and St. John

## October 3, 1978

ARNOLD M. SELKE, ESQ., St. Thomas, V.I., *for plaintiff*

ROBERT KING, ESQ., Deputy Assistant Attorney General (Department of Law), St. Thomas, V.I., *for defendant*

PETERSEN, *Judge*

## MEMORANDUM OPINION

This case examines the rule-making authority of the Commissioner of Health under 3 V.I.C. § 407, concerning sufficient proof of sickness, and whether directives of the Commissioner of Health issued thereunder conflict with established regulations for proof of sickness, 3 V.I.C. § 583.

### I

Plaintiff, S.I.U. of the Virgin Islands, affiliated with the Seafarers' International Union of North America, AFL–CIO, filed a complaint with this court on November 28, 1977. Plaintiff therein alleges that certain of its members, employees of the Government of the Virgin Islands, Department of Health, have systematically been denied the benefits of "sick leave" by virtue of directives issuing from the Commissioner of Health which require proof of sickness by presentation of a doctor's certificate, in conflict with and in violation of prior regulations concerning sufficient proof

of sickness, 3 V.I.R.&R. §§ 452–382 to 452–385. The complaint and exhibits introduced in support thereof, contend that administrative appeal has been properly exhausted[1] and that jurisdiction is therefore proper in this court pursuant to the Virgin Islands Declaratory Act, 5 V.I.C. § 1261 et seq. Plaintiff seeks a judicial declaration that the directive of the Commissioner concerning proof of sickness was unlawful, that sick leave wrongfully denied Department of Health employees thereunder be granted; plaintiff in addition seeks reasonable costs and attorney's fees.

Defendant's Answer, Defense, and Affirmative Defense, filed December 9, 1977, deny the illegality of the memoranda issued by the Commissioner of Health; as an affirmative defense, defendant Government contends that directives issued by the Commissioner fall within the discretionary rule-making authority provided by 3 V.I.C. § 407, and in no way conflict with the regulations issued by the Governor of the Virgin Islands pursuant to 3 V.I.C. § 583(b) (noted infra) concerning proof of sickness and sick leave.

Both parties have moved for summary judgment as provided by 5 V.I.C. App. I, Rule 56 of the Virgin Islands Code. Through affidavits, exhibits, and memoranda of law, the parties have introduced six separate memoranda issued by the Commissioner of Health in the period from July 8, 1977, to May 31, 1978, establishing various requirements for the production of a physician's certification as proof of an employee's sickness. There is no issue of fact as to the authenticity of these documents. While no details or specifics are before the court concerning denial of sick

---

[1] Mr. Antoine Charles on behalf of all those similarly situated directed an appeal to the Government Employees Service Commission, dismissed for lack of Commission jurisdiction on November 4, 1977. See Plaintiff's Exhibit D, Antoine Charles v. Dr. Roy L. Schneider, Commissioner, Department of Health (GESC, dismissed November 4, 1977).

leave to Department of Health employees based upon the rules issued by the Commissioner, it is conceded that sick leave has been denied one Mr. Antoine Charles, and other unnamed employees, pursuant to those rules.

Both parties having moved for summary judgment, the court finding that no genuine issue as to any material fact exists or is disputed by the parties, concludes that summary judgment is appropriate under 5 V.I.C. App. I, Rule 56.

## II

The sole issue before this court is whether the various memoranda issued by the Commissioner of Health from July 8, 1977, to May 31, 1978—variously characterized as orders, directives, rules, and regulations—are a legal exercise of the Commissioner's administrative powers.

■ The court finds those actions fatally defective in two respects: first, in that there exists no explicit authority for promulgation of regulations concerning employee sick leave by any executive officer except the Governor of the Virgin Islands; and second, in that the directives of the Commissioner, even if construed to be legally authorized, conflict directly with previously issued, legally authorized regulations governing the Department of Health and the Commissioner.

Section 583 of Title 3, Virgin Islands Code, at subsection (b), provides the exclusive legislative grant of rule-making authority regarding the question of proof of sickness in the administration of sick leave for government employees:

(b) Proof of sickness shall be subject to such regulations *as the Governor may prescribe.* (Emphasis added.)

Nowhere in the arguments or submissions of the Government is there any suggestion that the various memoranda

of the Commissioner of Health were issued by any other party.

■ There is no question of interpretation in the plain and simple meaning of this provision, nor is there a question of the Commissioner's disregard of it in attempting, on six separate occasions, to fashion a proof-of-sickness procedure peculiarly applicable to employees of the Department of Health. Without further regard to any regulations which the Governor may have prescribed, it is clear that *any* such actions by the Commissioner would be an unauthorized encroachment upon the clearly exclusive rule-making powers of the Governor. To construe the delegation of authority granted to the Governor, by 3 V.I.C. § 583(b), to also extend to his Commissioners would be to rewrite that provision; and in the face of its clear language, to so "enlarge" it would be contrary to our basic tenets of statutory construction and jurisprudence. Tracy Leigh Development Corp. v. Gov't of the Virgin Islands, 11 V.I. 244, 250 (3rd Cir. 1974).

In the present case, specific regulations exist concerning proof of sickness issued by the Governor's Office pursuant to 3 V.I.C. § 583, and contained at 3 V.I.R.&R. § 452–381 through § 452–385.[2] Subsection (c) of section 452–382 provides:

(c) Proof of sickness *for absences of four or more consecutive days* shall include a certificate from a practicing physician indicating the nature of the illness and certifying that the employee was incapacitated for work. (Emphasis supplied.)

For absences of less than four consecutive days, subsection (d) of the same section provides for proof of sickness by employee affidavit

[2] Rules and Regulations to Govern Sick Leave, promulgated by the Acting Governor June 6, 1969. Filed with Government Secretary June 12, 1969; File No. 578.

provided, however, that additional reasonable proof of incapacity to work, including a certificate from a practicing physician may also be required by a department or agency head *in individual cases*. (Emphasis supplied.)

Once again, the court is confronted with plain, simple language which clearly indicates both the amount of absence by an employee which makes the presentation of a physician's certificate necessary—i.e. four consecutive days —and the boundaries of discretion given an agency head in requiring such a certificate for absences of a shorter period of time. Examining the directives of the Commissioner of Health both singly and collectively, the court finds that these criteria were disregarded.

■ The first memorandum issued by the Commissioner on July 8, 1977 (Plaintiff's Exhibit "A") required proof of illness in the form of a physician's certificate by any Health Department employee "calling in 'sick' or taking sick leave for any period of time . . . " (emphasis supplied). There is no question that the wholesale ordering of the production of a physician's certificate by all employees and for absences of any duration violates both the spirit and substance of 3 V.I.R.R. § 452–382. Such a procedure disregards the explicit requirement of the regulation that only in *individual* cases may a physician's certificate be required for absences of less than four (consecutive) days. It is not necessary for the court to define precisely what the term "in individual cases" means in determining that it does not apply to the "across-the-board" requirement set forth by the Commissioner in his July 8 memorandum.

■ Those guidelines evidently were as illogical and unmanageable as they were illegal. Subsequent memoranda issued by the Commissioner on August 2, and September 8, 1977, attempted to minimize the costs and inconvenience to employees caused by the new proof-of-sickness procedure; the latter memorandum, in fact, sought to restrict

the special physician's certificate requirement only to those "employees who are chronic offenders of sick leave" by requesting the submission of names of "chronic offenders" by Division Directors and Hospital Administrators. With no definition of "chronic offender" offered by the Commissioner, and a characterization of certain parties thereby as "offenders" without recourse to the guidelines of 3 V.I. Rules and Regulations, the court cannot see how either the September 8 or August 2 memorandum cured the indiscriminate extension of a physician's certificate requirement to Health Department employees. As such, the proof of sickness requirement established thereby remained violative of 3 V.I.R.&R. § 452–382, which specifically permits proof of sickness for less than four days without a physician's certificate except in individual cases.

On May 4, 1978, the Commissioner issued a directive essentially reinstating the absolute requirements of the July 8, 1977, directive. On May 31, 1978, yet a sixth memorandum rescinded the May 4, 1978, procedures. This last directive—presumably the current policy statement by the Commissioner as to what constitutes sufficient proof of sickness—states that "[e]ffective immediately, a doctor's certificate will be required after three days of absence for sickness." (Defendant's Exhibit "E".)

█ The court is frankly puzzled as to the rationale behind this last in a series of ineffective attempts by the Commissioner of Health to address alleged sick leave abuses within the guidelines set forth by simple regulations. As noted, supra, subsection (b) of section 452–382 specifically establishes a four-consecutive day minimum period of absence before presentation of a doctor's certificate proving illness is to be required of an employee. The May 31, 1978, directive diminishes that minimum period by one day, to three days' absence, and is silent as to whether three days must be missed consecutively or otherwise be-

fore the rule is invoked. The Commissioner's three-day rule is thus in clear and absolute conflict, once again, with the pertinent regulation; it disregards the established period of absence below which a doctor's certificate is not mandatory, and further disregards the requirement that exceptions to that rule be made in individual cases only. The court questions what value comes of undercutting by one day the four-day guideline established by regulation, and how much more effectively the Commissioner of Health may combat suspicious employee absenteeism with his present directive. In any case, the court finds the May 31, 1978, order to fatally conflict with 3 V.I.R.&R. § 452–382.

## III

■ As to each of the directives requiring proof of sickness by physician's certificate for absences of less than four consecutive days, the Commissioner of Health has therefore altered rules and regulations "inconsistent with law or other regulations authorized by law, for the proper administration of the Department, [and] the distribution and performance of its business . . . ", prohibited by 3 V.I.C. § 407 (Rules and Regulations of Commissioner). The court therefore finds each of the six letters and memoranda issued by the Commissioner and referred to hereinabove to have been issued in excess of the authority granted the Commissioner of Health in 3 V.I.C. § 407, in conflict with the regulations found at 3 V.I.R.R. § 452–382, and so shall declare them void under the provisions of the Virgin Islands Declaratory Judgment Act, 5 V.I.C. § 1261 et seq. Plaintiff in its Complaint alleges the denial of sick leave to one Mr. Antoine Charles and other employees of the Virgin Islands Department of Health on the basis of the directives of the Commissioner beginning on May 8, 1977. (Plaintiff's Complaint, Paragraph 11, filed November 28, 1977.) The court, in the absence of specific allega-

tions brought forward in the pleadings or otherwise before it, may not in this summary judgment proceeding fashion specific remedies for those members of plaintiff Union wrongfully denied sick leave. A general declaration that sick leave be extended to those wrongfully denied it by the illegal directives of the Commissioner will issue, however. The court further emphasizes that it declares all such memoranda issued as of May 31, 1978—and thus, to date—to be violative of statute and regulation; therefore, while plaintiff's complaint seeks redress only as to the first memorandum issued by the Commissioner (July 8, 1977), the declaratory judgment of the court this day further extends redress to all employees wrongfully denied sick leave on the basis of procedures set forth in the memoranda of the Commissioner of August 2 and September 8, 1977, and of May 4 and May 31, 1978. In issuing a declaratory judgment in these proceedings, the court is in effect entrusting the Commissioner and Department of Health with the responsibility for correcting wrongful denials of sick leave to employees who failed to obey its unauthorized, invalid directives. Should the Department fail in its efforts to properly apply sick leave to its employees' absences since July, 1977, however, the court shall entertain the motions of individual(s), properly seeking redress pursuant to the court's judgment, who are able to demonstrate sick leave time due and owing such individual(s).

## IV

The court feels compelled, in conclusion, to briefly address the arguments of the Government in this action in support of the acts taken by the Commissioner of Health. The Government seems to perceive the Commissioner's rule-making as a necessary, temporary, emergency response to organized abuse of the sick leave system by Union employees—abuse which the Government alleges

created a crisis situation in 1977, and again in 1978, during which time the Virgin Islands were effectively denied medical care by employees staging "sick-outs" as a bargaining and pressure device.

While the court is not insensitive to the potential for misuse of the sick leave system, or to the potential dire consequences suggested by the sudden absence of health care, it must emphasize the countervailing potential for unfairness and abuse suggested by the Commissioner's initiatives in the present action. In a period of ten months, from July 1977 to May 1978, a total of six different procedures have been implemented by the Commissioner of Health. Some were designed to ameliorate the hardships caused by others; the court has found none of them to be in accord with statute or extant regulations. In any case, the result of a presumably good-faith attempt to remedy problems within the Department of Health resulted in the ad hoc, inconsistent administration of an unauthorized and sometimes plainly illogical system to insure proof of sickness. Employees legitimately absent from work were compelled to obtain doctors' certificates at significant cost and to their inconvenience. The Department of Health segregated its sick leave procedures from those of other departments and other employees of the government, in specific disregard of the system-wide equality and parity which the government sick leave system contemplates. In short, more problems were created than solved by the Commissioner's actions, and curing those problems presently entails time, expenditure and labor-management conflict which efficient departmental administration successfully avoids.

Moreover, the court must point out that the Government is *not* without effective legal means for dealing with suspected abuse of sick leave time by government employees. First, employee absences of less than three consecutive

days currently qualify for sick leave credit only upon presentation of an employee's affidavit, 3 V.I.R.R. § 452-382(d). The plaintiff has represented that the affidavit is now further supplemented or replaced by an official Government form citing incapacity and absence. (Affidavit of Amos A. Peters, Paragraph 16, in support of Plaintiff's Motion for Summary Judgment, filed August 10, 1978.) Fraud or misrepresentation in the filing of either of these documents subjects the misrepresenting government employee to criminal sanction, 14 V.I.C. § 843, fines, 3 V.I.C. § 633, and termination of employment with the Government, 3 V.I.C. § 636.

■ Secondly, the court notes that it is within the rule-making power of the Governor, as authorized by 3 V.I.C. § 583(b), to prescribe alternative regulations concerning proof of sickness. The language of that provision, making "[p]roof of sickness . . . subject to such regulations as the Governor may prescribe . . . " leaves full discretion to the Governor to establish, alter, amend, or create standards for proof of sickness as demanded by exigent circumstances. While the court does not presently pass upon the question, it seems in fact that § 583(b) would allow a Governor to enact the interim measures which the court today finds the Commissioner of Health unauthorized to issue. In any case, there is a flexibility in determining what constitutes proof of sickness, which may be exercised within those statutory constraints upon the executive branch; it is a flexibility, however, which is the prerogative of the Governor, and not of his Commissioners.

■ Finally, the court notes that in many emergency situations where illegal abuse of sick leave by government employees, and of injury caused thereby, can be demonstrated, recourse is available in the courts for temporary injunctive relief pursuant to Rule 65(b) of Title V, Appendix I of the Virgin Islands Code. Where the prerequisite

conditions of that rule are met, the court's order may alleviate the type of crisis alleged to have developed in the present action much more quickly and effectively than the type of rule change attempted by the Commissioner. Each of the three alternatives herein suggested by the court, in fact, is a legally sound and well-developed means for coping with the problem confronting the Department of Health in July, 1977 and May, 1978. In both respects, therefore, each alternative can be distinguished from the Commissioner's responses to those problems.